```
          IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF TEXAS
                   FORT WORTH DIVISION

NATIONAL RESORT MANAGEMENT     §
CORP., ET AL.,                 §
                               §
       Movants,                §
                               §
                               §
VS.                            §   NO. 4:06-CV-641-A
                               §
RACHEL D. CORTEZ, ET AL.,      §
                               §
       Claimants.              §
                               §
```

## MEMORANDUM OPINION
### and
## ORDER

Pending before the court are motions to vacate an arbitration order, an arbitration award, and a supplemental arbitration award. Also pending before the court is a cross-motion to confirm all of the above. Having considered the briefing submitted by all parties, the evidence, and the applicable legal authorities, the court concludes that the motions to vacate should be granted to the extent stated below and the motion to confirm denied.

### I.

### Overview

Rachel D. Cortez ("Cortez"), Felicia G. Hernandez ("Hernandez"), Crystal I. Moore ("Moore"), Teresa D. Morath ("Morath"), and Mary Noble ("Noble"), (collectively, "the claimants"), were employed by National Resort Management Corporation ("NRMC") as waitresses at The Cliffs, a resort at Possum Kingdom Lake. Due to the undisputed sexual harassment of claimants by Curren Dodds ("Dodds"), the head chef at The Cliffs,

an arbitration against NRMC and purported related entities, namely Double Diamond, Inc. ("DDI") and Double Diamond Companies, ensued.

The arbitration hearing took place in April 2006 and lasted approximately seven days.  On July 24, 2006, the arbitrator, Deidre O. Dexter, issued her decision ("the Arbitration Award") in favor of claimants for hostile work environment under Title VII of the Civil Rights Act of 1964.[1]  See Arbitration Award at 2-5, which, in turn, is Ex. 2 to Claimants' Mots. to Vacate Arbitration.  She awarded claimants between $7,500 and $10,000 each for emotional pain and mental anguish and collectively $5,758.01 in costs and $87,600 in attorneys' fees.  Id. at 5-7.  By supplemental decision of September 5, 2006, she further awarded them post-judgment interest.  See Ex. 3 to Claimants' Mots. to Vacate Arbitration.

II.

Grounds Presented

Pursuant to the Federal Arbitration Act ("FAA"), NRMC and DDI (collectively, "movants")[2] initiated this suit.  See 9 U.S.C. § 10.[3]  They request the court to vacate (1) the Arbitration

---

[1]The arbitrator found against claimants on their other claims for retaliation, assault, and battery.  See Arbitration Award at 2.

[2]Presumably because claimants take the position that Double Diamond Properties is not a legal entity, it is not listed a movant in the motions to vacate.

[3]The FAA provides that the district court wherein the arbitration award was made may vacate that award upon the motion of any party.  See 9 U.S.C. §§ 10, 11.  Because the award was made in Fort Worth, Texas, venue here is proper.  Likewise, although the FAA does not create federal jurisdiction, see Speciality Healthcare v. St. Mary's Parish Hosp., 220 F.3d 650, 653 n.5 (5th
(continued...)

2

Award, (2) the arbitrator's September 5, 2006, supplemental decision awarding claimants post-judgment interest, and (3) the arbitrator's order of May 31, 2006, after the arbitration hearing had concluded, permitting claimants to amend their pleadings to add DDI as a party.

### III.
### Applicable Standards of Review

Ordinarily, a district court's review of an arbitration award is extraordinarily narrow.  See Hughes Training Inc. v. Cook, 254 F.3d 588, 592 (5th Cir. 2001) (citations omitted).  The parties are free, however, to structure their arbitration agreement as they see fit, including an expansion of the judicial review of an arbitration award beyond the scope of the FAA.  Id. at 592-93.  And that is precisely what the parties did here.  Specifically, the arbitration agreement at issue provides: "In an action seeking to vacate an award, the standard of review applied to the Arbitrator's findings of fact and conclusions of law will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury."  See Movants' App. to Mots. to Vacate Arbitration Award ("App.") at 758.[4]  Under this standard, this court must review conclusions of law de novo and findings of fact for clear error.  See Switzer v. Wal-

---

[3](...continued)
Cir. 2000), the court is satisfied that claimants' Title VII claim is sufficient to supply federal-question jurisdiction under 28 U.S.C. § 1331.

[4]Because the appendix submitted by movants was so comprehensive, instead of filing their own, claimants chose to cite to movants' appendix.  Hence, there is only one evidentiary appendix.

3

Mart Stores, Inc., 52 F.3d 1294, 1298 (5th Cir. 1995). Clear error does not exist merely if this court would have weighed the evidence differently. Rather, for a fact finding to be clearly erroneous, this court must be left with "a definite and firm conviction that a mistake has been made." Id.

## IV.

## Analysis

A.  The Arbitration Award

  1.  Claimant Moore

Soley because Moore was fired and thereby suffered an adverse employment action, the arbitrator held that movants were not entitled to assert the affirmative defense of Ellerth/Faragher[5] to her claim for hostile work environment. Based on this finding alone, she further concluded, without any discussion or legal analysis, that movants were liable to Moore. In so holding, the arbitrator, however, used the wrong legal analysis. If an employee suffers a tangible employment action, as Moore did, her suit is to be classified as a quid pro quo sexual harassment case, not a hostile work environment case. See Casiano v. AT&T Corp., 213 F.3d 278, 283 (5th Cir. 2000). That classification of quid pro quo harassment "provides a fork in the road that branches toward a second stop at which the court must determine whether the tangible employment action suffered by the employee resulted from [her] acceptance or rejection of [her] supervisor's alleged sexual harassment." Id. If such a nexus

---

[5] See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 805-07 (1998).

4

cannot be shown, then the employer is not vicariously liable under Title VII.  Id.  If such a nexus can be shown though, the employer is vicariously liable per se.  Id. at 283-84.  The affirmative defense of Ellerth/Faragher is thus irrelevant in this context.  Id. at 284.

Presumably because the arbitrator wrongly classified Moore's claim as one for hostile work environment,[6] she made no finding as to whether there was any causal connection between the termination of Moore and Dodds's conduct.  And Moore otherwise fails to cite to any evidence within the approximately 1,500-page record showing the requisite causal connection.[7]  Consequently, the Arbitration Award is properly vacated as to the judgment in favor of Moore.

   2.   The Remaining Claimants and the
        Ellerth/Faragher Defense

The remaining claimants--Cortez, Hernandez, Morath, and Noble--did not suffer a tangible employment action. Consequently, the arbitrator correctly characterized their claims as hostile work environment claims.  See Casiano, 213 F.3d at 284.  Characterized as such, "the other branch at the fork in the Ellerth/Faragher road must be followed."  Id.  On this branch, the first inquiry is whether the supervisor's actions were severe

---

[6] Even if Moore's claim were for hostile work environment, it too would be without merit.  As discussed below, movants have, contrary to the arbitrator's decision, met the second prong of the Ellerth/Faragher defense with respect to all of the claimants.  They are therefore not liable to any of the claimants for hostile work environment as a matter of law.

[7] In the summary-judgment context, a district court has no duty to sift through the record in search of evidence to support a party's claim.  See Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  The court sees no reason why it would have such a duty here either.

5

and pervasive.  If not, the employer is not vicariously liable. If yes, then the employer is liable unless it "can prove both prongs of the Ellerth/Faragher affirmative defense, to wit . . . (1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer."  Id. (citing Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 805-07 (1998)).

Here, no one disputes that Dodds sexually harassed claimants and that his conduct was severe and pervasive.[8]  Consequently, movants are liable on claimants' claims for hostile work environment unless they can prevail under the Ellerth/Faragher defense.  The arbitrator found that, by having an effective policy prohibiting sexual harassment and disseminating that policy to their employees, movants had met the first prong.[9]  See Arbitration Award at 4, ¶¶ 10-11.  The arbitrator, however, concluded that movants had failed to meet the second prong.  Id. at 4-5, ¶¶ 12-13.  Movants contend that this was error, because, as a matter of law, claimants unreasonably failed to take advantage of the preventative or corrective opportunities they were provided.  See Claimants' Br. at 16-21.  The court agrees.

---

[8]Consequently, the court need not describe Dodds's conduct.  Further, as deplorable as his conduct toward claimants was, it is not, at least under the circumstances of this case, relevant to whether movants are vicariously liable for that conduct.

[9]To the extent that claimants attempt to challenge this finding in their briefing, they fail.  None of the claimants has moved to vacate any portion of the Arbitration Award.  Even if they had, the court concludes that the arbitrator's finding in this regard has ample support in the record.

6

The duty imposed on an employee by the Supreme Court in this context is a serious one.  She is "to use such means as are reasonable under the circumstances to avoid or minimize damages." See Faragher, 524 U.S. at 806.  Thus, if an employer has provided an effective mechanism for reporting and resolving complaints of sexual harassment, as is the case here, and an employee unreasonably fails to avail herself of it, she is simply not permitted to recover damages.  Id. at 806-807; Ellerth, 524 U.S. at 765.

Consistent with Supreme Court precedent, the Fifth Circuit has applied a literal and common-sense meaning to what is reasonable.  For example, in Wyatt v. Hunt Plywood Co., Inc., 297 F.3d 405, 410-413 (5th Cir. 2002), an employee who had been allegedly harassed by her immediate supervisor reported the harassment to her next higher supervisor, who, in turn, was ineffective in dealing with the situation.  The employer's sexual harassment policy was clear, however, that there were several other persons with higher authority who were available to receive and pursue sexual harassment claims.  Id. at 413.  The Fifth Circuit held that the employee's "reasonable (not to mention obvious) course of action" would have been to report her supervisor's conduct to one of these individuals.  Id.  Her failure to do so was held unreasonable despite her claim that she had been told not to go over the head of the person to whom she had reported the harassment.  Id.  The Fifth Circuit reached the same conclusion in Hockman v. Westward Communications, L.L.C., 407 F.3d 317, 329-330 (5th Cir. 2004), where it held that a

7

female employee was unreasonable, as a matter of law, in failing to bring her complaint to a "higher-echelon employee" despite her subjective view that she could not go over the head of the ineffective person to whom she had reported the harassment. The Fifth Circuit further held that her subjective view in this regard was "immaterial to the fact that the policy she acknowledged directed her to do just that," namely go over his head. Id. at 333. Rather, the relevant standard is an objective one of whether a reasonable person would have reported the harassment up the chain. Id.

Movants' Code of Practices & Ethics and Employee Handbook, both of which were received and signed by all the claimants, collectively provided claimants with numerous persons to whom harassment could and should be reported. Specifically, the section titled "**OBLIGATION TO REPORT**" of the Code of Ethics, expressly provided:

> Employees should immediately report questionable acts or practices to R. Jeffrey Schmidt, Vice-President and General Counsel, (214) 706-9823, or Fran Pfeifle, Manager of Human Resources, (214) 706-9831 . . . If an employee is not satisfied with the initial response or is unable to contact either of the individuals named above, he or she should contact R. Mike Ward, President, (214) 706-9801. No reprisals or other harm shall come to any employee for reporting a real or apparent violation    . . . An employee . . . who does not believe the violation has been properly investigated and resolved within a reasonable time by the Ethics Committee, should contact appropriate federal or state governmental agencies.

See App. at 679, ¶ 11. In addition, the Employee Handbook encouraged employees with a problem to first discuss it with their immediate supervisor or any management representative. Id. at 657. It further provided that, "if resolution of the problem

8

. . . does not occur at the next highest level of management, the employee should contact the Human Resources Department."  Id.

Hernandez, Cortez, Moore, and Morath only complained of Dodds's conduct to Noble, a fellow victim of Dodds's harassment and claimant in this suit.  When Hernandez spoke to Noble, Noble was a co-waitress and had no supervisory role at The Cliffs.  See App. at 380.  Although Cortez, Moore, and Morath spoke to Noble after she was promoted in February 2004 from waitress to front-of-the-house supervisor at The Cliffs, Dodds was Noble's supervisor even after her promotion.  Id. at 176, 716.  Noble, in turn, only complained of Dodds's conduct to Stack Bowers, the general manager of The Cliffs, who, according to Noble, proved wholly ineffective in stopping the conduct.  See App. at 159, 391-94, 1410.[10]  In May 2004, Noble called Fran Pfeifle ("Pfeifle"), the head of human resources and one of the individuals the Code of Ethics lists as someone to whom sexual harassment should be reported.  During that call, Noble complained to Pfeifle about a variety of issues at The Cliffs, but did not accuse Dodds of sexual harassment.  Id. at 273-274.

The court concludes that all claimants[11] unreasonably failed to take advantage of the corrective opportunities provided to them by movants.  Specifically, an objectively reasonable

---

[10] Because their briefing indicates that the parties generally agree as to whom claimants reported Dodds's misconduct, the court has not engaged in the tedious task of including every conceivable pinpoint cite to the record on this issue.

[11] Moore, too, only reported the harassment to Noble.

9

employee would not have limited herself to complaining either to a fellow victim of the harassment or to a general manager, especially when both proved ineffective in dealing with the situation.  Rather, an objectively reasonable employee would have utilized the reporting options at hand to individuals higher up in the company such as Pfeifle, the general counsel, or even the president.  That Dodds's employment was ultimately terminated when his sexual harassment of someone unrelated to this suit was reported to Pfeifle, see App. at 278-79, shows that movants had a policy that worked and underscores why the Fifth Circuit requires employees reasonably to use such a policy before being permitted to hold her employer vicariously liable.

While acknowledging the number of other persons to whom claimants could have gone, the arbitrator nonetheless found claimants' limited reporting reasonable:

> An employer is free to have as many options as it chooses for its employees to report sexual harassment.  However, when there are several options available, the employer cannot then be heard to complain when an employee chooses one option over another.

See Arbitration Award at 5, ¶ 12.  Per the Fifth Circuit, however, the employer can, contrary to the opinion of the arbitrator, be heard to complain when an employee unreasonably fails to pursue available and effective reporting options as here.  See, e.g., Wyatt, 297 F.3d at 410-413; Hockman, 407 F.3d at 329-330.  The arbitrator thus erred in holding that movants had failed to meet the second prong of the Ellerth/Faragher defense.  The Arbitration Award is properly vacated as to the judgment in favor of Cortez, Hernandez, Morath, and Noble.

B.  <u>Remaining Issues Relating to Damages
    and the May 31, 2006, Order</u>

Because the court has found that the arbitrator erred in holding movants liable to any of the claimants, the court need not specifically address movants' challenges to the award of damages, costs, attorneys' fees, and post-judgment interest.  All of these awards are vacated.  Similarly, in light of the court's rulings above, movants' motion to vacate the arbitrator's order of May 31, 2006, is moot.

V.

<u>Order</u>

For the reasons discussed above, the court ORDERS as follows:

(1) The Arbitration Award in favor of claimants, as supplemented by the arbitrator's order of September 24, 2006, be, and is hereby, vacated;

(2) Claimants' cross-motion to confirm the Arbitration Award be, and is hereby, denied.

SIGNED January 16, 2007.

      /s/ John McBryde
JOHN McBRYDE
United States District Judge

11